IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-613

Filed: 20 December 2016

Alamance County, No. 07-E-406

IN THE MATTER OF THE ESTATE OF JAMES JUNIOR PHILLIPS, DECEASED,

MARY PHILLIPS, CAVEATOR
DIANE BOSWELL, PROPOUNDER

Appeal by caveator from order entered 2 February 2016 by Judge Eric C. Morgan in Alamance County Superior Court. Heard in the Court of Appeals 17 November 2016.

*Ronald Barbee for caveator-appellant.*

*Holt, Longest, Wall, Blaetz & Moseley, PLLC, by W. Phillip Moselely, for propounder-appellee.*

TYSON, Judge.

Mary Phillips ("caveator") appeals from an order granting summary judgment in favor of Diane Boswell ("propounder"). We reverse and remand for trial.

I. Factual Background

James Junior Phillips ("decedent") was born 20 September 1925 and died 2 May 2007. The decedent was the father of two children from two separate marriages, including the caveator. The decedent also fathered other children out of wedlock, including the propounder. His death certificate lists the cause of his death as general

malnutrition and dementia. The death certificate lists the propounder as the informant.

Shortly after decedent's death, the propounder submitted a paper writing as the purported last will of the decedent signed on 3 April 2007 ("2007 Will"). The 2007 Will was signed less than a month prior to decedent's death and left all of his property to the propounder. The 2007 Will was admitted to probate and Letters Testamentary were issued to the propounder.

On 3 February 2010, the caveator filed a caveat to the 2007 Will. First, the caveator asserted at the time the decedent allegedly signed the 2007 Will, he suffered from dementia and lacked sufficient mental capacity to execute the will or any other legal document. Second, she asserted the 2007 Will was procured by undue influence and duress over the decedent by the propounder and possibly others. Finally, she asserted, upon information and belief, that the 2007 Will was not properly executed as required by law for a valid attested will.

On 29 October 2012, the propounder filed a response to the caveat to the probate of the will. The response alleged an ongoing conflict between the caveator and the decedent. The decedent was alleged to have had little contact with the caveator for more than fifteen years prior to his death. The propounder referenced and attached another will, which the decedent had purportedly executed in 1993 ("1993 Will"). The 1993 Will left the majority of the decedent's property to the

propounder and his nephew. The decedent also left a remaining vehicle to his girlfriend at the time, as well as a life estate in a house, with the remainder to the propounder and the decedent's nephew. The 1993 Will specifically made no bequest or devise to the caveator.

The propounder's response to the caveat also notes the decedent and attorney who executed the 2007 Will agreed to tear the 1993 Will in order to revoke it, pursuant to the execution of the 2007 Will. The caveator asserted neither the caveator nor her attorney had received a copy of the response, along with the certificate of service and exhibits. The trial court denied the caveator's motion to strike the response from being included in the record on appeal.

On 6 January 2016, the propounder filed a motion for summary judgment with six affidavits and two depositions in support of her motion. Two of the affidavits were from the two attorneys who had prepared the 1993 Will and 2007 Will. Each attorney separately stated the decedent was competent to execute each respective will. The affidavit regarding the 2007 Will asserts it was executed outside of the attorney's office.

Two of the propounder's other affidavits were submitted by a married couple, Herman and Shirley Long, who were long-time friends of the decedent. Their affidavits asserted Mrs. Long had suggested to the decedent that he prepare a will due to his declining health. Their affidavits asserted decedent responded that he

already had a will, but was thinking of changing it to give the propounder all of his property. Mrs. Long's affidavit also stated she knew the caveator and noted the caveator had an estranged relationship with the decedent.

The propounder's final two affidavits were submitted by one of decedent's ex-wives and from a former girlfriend. Both women's affidavits stated they knew the propounder and caveator, and the propounder's and caveator's respective relationships with their father. Both women noted the caveator had a contentious relationship with the decedent, but that the decedent loved the propounder, and she had looked after him during his illness. After visiting the decedent during the last year of his life, both women believed him to be in good mental health and aware of his property holdings. Overall, all six of the propounder's affidavits asserted the decedent was competent to make a will, had a good relationship with the propounder, and had a strained relationship with the caveator.

On 21 January 2016, the caveator responded with four affidavits made in opposition to the propounder's motion. These affidavits were sworn by blood relatives of the decedent, including his brother, two nieces, and grandniece. None of these affiants were interested parties in the estate.

These affidavits directly contradict the claims asserted in the propounder's affidavits, asserting decedent was in good mental health and that he wanted the propounder to inherit all his property. Three of the affiants stated they had visited

the decedent almost daily from March 2007 until his death; the fourth affiant visited him frequently during that time frame. The affiants all assert decedent told them he did not trust the propounder, thought she was trying to poison him, and that she had stolen money from him. Three of the affiants assert that on one occasion the propounder refused to let the caveator see her father and had pushed her out of the house. These affiants also assert they had never seen Herman or Shirley Long at decedent's house.

The affiants allege the decedent stated, both before and after his admission to the hospital, that the propounder "was trying to get him to sign some papers that would give her all of his property" and he did not want to leave her any of his property. Specifically upon his return from the hospital, decedent told them he had refused to sign any papers and did not want the propounder to have any of his property. The affiants also assert they knew decedent's signature, and the signature on the 2007 Will was not that of the decedent.

The propounder moved to strike these affidavits on the grounds they (1) were not based upon personal knowledge, (2) contained hearsay, (3) were barred by Rule 601 of the North Carolina Rules of Civil Procedure, and (4) the statements regarding the decedent's signature raised issues not pled by the caveator. The trial court heard arguments on the propounder's motion to strike the affidavits and motion for summary judgment on 25 January 2016.

The trial court granted the propounder's motion to strike the caveator's affidavits and held the tendered affidavits were not timely served pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, they violated Rule 802 of the North Carolina Rules of Evidence, and the holding of *In re Will of Ball*, 225 N.C. 91, 33 S.E.2d 619 (1945). The trial court also granted the propounder's motion for summary judgment and concluded the caveator did not have standing to bring the action. The trial court further stated that even if the caveator did have standing, no genuine issue concerning any material fact existed and the propounder was entitled to summary judgment as a matter of law. The caveator appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1), which provides for an appeal of right from any final judgment of a superior court. N.C. Gen. Stat. § 7A-27(b)(1) (2015).

## III. Issues

The caveator contends the trial court erred by (1) granting the propounder's motion to strike her submitted affidavits made in opposition to the propounder's motion for summary judgment, and (2) granting the propounder's motion for summary judgment.

## IV. Standard of Review

A caveat is an *in rem* proceeding and operates as "an attack upon the validity of the instrument purporting to be a will." *In re Will of Cox*, 254 N.C. 90, 91, 118 S.E.2d 17, 18 (1961) (citation omitted). This Court has noted:

> When a caveat is filed the superior court acquires jurisdiction of the whole matter in controversy, including both the question of probate and the issue of devisavit vel non. Devisavit vel non requires a finding of whether or not the decedent made a will and, if so, whether *any of the scripts* before the court is that will. Thus, in a case such as this one, where there are presented multiple scripts purporting to be the decedent's last will and testament, the issue of devisavit vel non should be resolved in a single caveat proceeding in which the jury may be required to answer numerous sub-issues[.]

*In re Will of Dunn*, 129 N.C. App. 321, 325-26, 500 S.E.2d 99, 102 (1998) (emphasis original) (citations and quotation marks omitted), *disc. review denied*, 348 N.C. 693, 511 S.E.3d 645 (1998).

Summary judgment may be entered in a caveat proceeding in factually appropriate cases. *See, e.g.*, *In re Will of Jones*, 362 N.C. 569, 573-74, 669 S.E.2d 572, 576-77 (2008) (analyzing the case under traditional summary judgment standards to determine whether genuine issues of material fact existed). While we review an order striking an affidavit in support of or in opposition to summary judgment for abuse of discretion, *Blair Concrete Servs., Inc. v. Van-Allen Steel Co.*, 152 N.C. App. 215, 219, 566 S.E.2d 766, 768 (2002), we review the trial court's ultimate

determination of the summary judgment motion *de novo. In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). When considering a motion for summary judgment, the trial court views the evidence in a light most favorable to the nonmoving party and resolves all inferences against the moving party. *In re Will of Jones*, 362 N.C. at 573, 669 S.E.2d at 576. "Nevertheless, if there is any question as to the weight of evidence summary judgment should be denied." *Id.* at 573-74, 669 S.E.2d at 576 (citation, brackets, and quotation marks omitted).

Because of the factual nature of issues presented during caveat proceedings, "[s]ummary judgment should be entered cautiously." *Seagraves v. Seagraves*, 206 N.C. App. 333, 338, 698 S.E.2d 155, 161 (2010); *see In re Will of Jones*, 362 N.C. at 582-83, 669 S.E.2d at 582 (reversing summary judgment on undue influence); *In re Will of Priddy,* 171 N.C. App. 395, 402, 614 S.E.2d 454, 460 (2005) (reversing summary judgment on testamentary capacity, undue influence, and proper execution of the will).

## V. Standing

The propounder asserts the caveator, although an heir-at-law, did not have standing to bring the caveat to the 2007 Will. The propounder argues the caveator would not take under the 1993 Will, which the propounder submitted to the trial court for consideration in her response to the caveat. We disagree.

"Standing to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Town of Ayden v. Town of Winterville*, 143 N.C. App. 136, 140, 544 S.E.2d 821, 824 (2001) (citations and quotation marks omitted). The parties in a caveat proceeding "are not parties in the usual sense but are limited classes of persons specified by the statute who are given a right to participate in the determination of probate of testamentary script." *In re Ashley*, 23 N.C. App. 176, 181, 208 S.E.2d 398, 401, *cert. denied*, 286 N.C. 335, 210 S.E.2d 56 (1974).

N.C. Gen. Stat. § 31-32 allows any person "interested in the estate" to file such an action, which includes anyone "who has a direct pecuniary interest in the estate of the alleged testator which will be defeated or impaired if the instrument in question is held to be a valid will." *In re Ashley*, 23 N.C. App. at 180, 208 S.E.2d at 401 (citation and quotation marks omitted).

North Carolina courts have determined that heirs-at-law, next of kin, and persons claiming under a prior will are all considered as a person "interested in the estate" under the statute. *See e.g.*, *Sigmund Sternberger Foundation, Inc. v.*

*Tannenbaum*, 273 N.C. 658, 674, 161 S.E.2d 116, 127 (1968) (persons claiming under a prior will); *Brissie v. Craig*, 232 N.C. 701, 705, 62 S.E.2d 330, 333 (1950) (heirs-at-law); *Randolph v. Hughes*, 89 N.C. 428, 431 (1883) (next of kin).

In *In re Will of Barnes,* 157 N.C. App. 144, 162, 579 S.E.2d 585, 597 (2003), *rev'd per curiam for reasons stated in the dissent,* 358 N.C. 143, 592 S.E.2d 688-89 (2004), beneficiaries under a prior will, who were not heirs-at-law, filed a caveat to the probated will. While the jury found the probated will had been procured by undue influence, it also found that the prior will had been revoked by the testator. *Id.* at 146, 579 S.E.2d at 587.

The majority's opinion held that, in managing the litigation of the caveat to the probated will, the trial judge should have first ordered the jury to determine whether the prior will had been revoked, prior to deciding the validity of the probated will. *Id.* at 158-59, 579 S.E.2d at 594-95. The majority reasoned that in order to determine whether the beneficiaries of the prior will had standing to caveat the probated will, it was first necessary to determine whether the prior will had been revoked. *Id.* If the prior will had been revoked, then the caveators did not have standing and the trial court lacked jurisdiction over the matter. *Id.*

The dissenting judge, and subsequently the Supreme Court, disagreed. *Id.* at 163, 579 S.E.2d at 597 (Hudson, J., concurring in part and dissenting in part). The dissenting judge argued the caveators, as beneficiaries under a previous will, had

standing to bring the caveat against the probated will, and such caveat properly invoked the jurisdiction of the court. *Id.* Most significantly, the dissenting judge stated:

> because the will caveat is a proceeding *in rem*, I do not believe that the jury's ultimate determination that the [previous] will had been revoked should be held to erase the subject matter jurisdiction of the superior court over the entire proceeding *ab initio*. . . .
>
> . . . Whenever persons claiming under a prior will institute a caveat, they are potential, not certain, beneficiaries of the estate in question. Even if their claimed interest in the estate ultimately is not upheld, they nonetheless have standing to litigate the issues.

*Id.*

The dissent's analysis, adopted by our Supreme Court, in *In re Will of Barnes* is applicable here. While the propounder argues the caveator lacks standing, because the caveator does not take under the 1993 Will, our courts' precedents indicate otherwise. In this case, the caveator is a potential, but not certain, beneficiary of the estate in question as the decedent's heir-at-law. *See id.*; *Brissie v. Craig*, 232 N.C. at 705, 62 S.E.2d at 333. As such, she had standing to bring the initial caveat against the 2007 Will. Upon bringing the caveat, the court obtained jurisdiction over the whole controversy, which eventually included the 1993 Will submitted by the propounder. *See id.*

One of the purposes of a caveat proceeding is for the jury to determine if "any of the scripts" before the court are, in fact, the decedent's will. *In re Will of Dunn*, 129 N.C. App. at 325, 500 S.E.2d at 102 (emphasis and citation omitted). Whether the caveator's claimed interest is ultimately upheld, as an heir-at-law she had standing to challenge the 2007 Will. *See In re Will of Barnes*, 157 N.C. App. at 163, 579 S.E.2d at 597. (Hudson, J., concurring in part and dissenting in part). The propounder's subsequent submission of the 1993 Will does not change her status as such nor dissolve the court's jurisdiction. Even if the 2007 Will is held to be invalid and the 1993 Will upheld, because the caveator is an heir-at-law, this determination would not deprive the trial court of jurisdiction *ab initio. See id.* The trial court erred in ruling the caveator lacked standing to bring the caveat to the 2007 Will. That portion of the trial court's order is reversed.

## VI. Motion to Strike

The caveator argues the trial court erred in granting the propounder's motion to strike her submitted affidavits made in opposition to the propounder's motion for summary judgment. The trial court granted the motion to strike the affidavits pursuant to: (1) Rule 56 of the North Carolina Rules of Civil Procedure; and, (2) Rule 802 of the North Carolina Rules of Evidence, along with *In re Will of Ball*, 225 N.C. 91, 33 S.E.2d 619. We address both of these grounds.

### 1. Timing of the Affidavits

The trial court first determined the affidavits were not timely served in accordance with Rule 56(c) of the North Carolina Rules of Civil Procedure. We disagree.

In response to a motion for summary judgment, the adverse party may submit opposing affidavits at least two days prior to the hearing. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). Here, the caveator's response to the propounder's motion for summary judgment and attached affidavits were served 21 January 2016. The summary judgment hearing was held on 25 January 2016, four days later. The affidavits were clearly served by hand delivery before the two day limit proscribed by Rule 56(c). The trial court abused its discretion by striking caveator's four affidavits on that ground. *See id.*

### 2. Substance of the Affidavits

The trial court found the caveator's four tendered affidavits "do not set forth such facts as would be admissible and contain hearsay and do not address the issues of Undue Influence, Duress or proper execution of the will." Based upon this finding of fact, the trial court concluded the propounder's objection to and motion to strike the caveator's affidavits in opposition to summary judgment should be allowed pursuant to Rule 802 of the North Carolina Rules of Evidence and the holding of *In re Will of Ball.* We disagree.

Affidavits submitted in opposition to a motion for summary judgment must be: (1) made on personal knowledge; (2) set forth such facts as would be admissible in evidence; and, (3) affirmatively show the affiant is competent to testify to the matters stated therein. N.C. Gen. Stat. §1A-1, Rule 56(e) (2015). The key issue in this case is whether the statements in any or all of the caveator's four affidavits "would be admissible in evidence." *Id.*

Our courts have long and consistently allowed a testator's declarations to be admitted into evidence for certain purposes during a caveat proceeding. *See In re Will of Brown*, 194 N.C. 583, 595-96, 140 S.E. 192, 199 (1927); *In re Will of Ball*, 225 N.C. at 94-95, 33 S.E.2d at 621-22. For example, the Supreme Court of North Carolina has stated:

> [i]t has been generally held that declarations, oral or written, by the deceased may be shown in evidence upon the trial of an issue involving his mental capacity, whether such declarations were made before, at or after the date on which it is contended that the deceased was of unsound mind.

*In re Will of Brown*, 194 N.C. at 595, 140 S.E. at 199 (citation omitted).

Our Supreme Court has also allowed a testator's declarations to be admitted for the purpose of showing undue influence:

> Evidence of declarations of the testator which disclose his state of mind at the time of the execution of the paper writing or the circumstances under which it was executed, tending to show he did or did not act freely and voluntarily, is competent as substantive proof of undue

- 14 -

> influence. *Other declarations, when relevant, may be admitted as corroborative or supporting evidence*, but alone they are not sufficient to establish the fact at issue.

*In re Will of Ball*, 225 N.C. at 94-95, 33 S.E.2d at 622 (internal citation omitted) (emphasis supplied).

Here, each of the affidavits in opposition to the propounder's motion for summary judgment include statements, which were allegedly made by the decedent to the affiants between March and April 2007. The affiants assert the decedent told them he did not trust the propounder, thought she was trying to poison him, and that the propounder had stolen money from him.

The affiants also assert decedent told them, both before and after his admission to the hospital, that the propounder was trying to get him to sign some papers that would give her all of his property and decedent did not want to leave the propounder any of his property.

The propounder asserts these statements were almost entirely confined to those made after the execution of the will, and as such the holding in *In re Will of Ball* prohibits them from being admitted into evidence. We disagree.

First, based upon the record, it appears these statements were made sometime between March 2007 and April 2007. The decedent's 2007 Will was allegedly signed on 3 April 2007, which means some of these statements were necessarily made prior to the purported execution of the 2007 Will. Second, even if

some of the statements were made after the execution of the will, nothing in *In re Will of Ball* requires their exclusion. *See In re Will of Ball*, 225 N.C. at 94-95, 33 S.E.2d at 622.

The Court in *In re Will of Ball* specifically allows other declarations, including those not made at the time of the execution of the will, or which demonstrate the circumstances under which it was executed, to be admitted into evidence, when relevant. *Id.*; *see* James B. McLaughlin, Jr. and Richard T. Bowser, *Wiggins Wills and Administration of Estates in North Carolina* § 6:3(b) (4th ed. 2005) ("North Carolina appears to . . . admit the testator's post-testamentary declarations as substantive proof of undue influence." (citing *Caudill v. Smith*, 117 N.C. App. 64, 450 S.E.2d 8 (1994); *In re Will of Hall*, 252 N.C. 70, 113 S.E.2d 1 (1960); *In re Will of Ball*, 225 N.C. 91, 33 S.E.2d 619).

While these statements may not establish all the facts at issue, that question was not before the court on the motion to strike the affidavits. Rather, the question was whether these statements were admissible into evidence. *See* N.C. Gen. Stat. § 1A-1, Rule 56(e). The decedent's declarations included in the affidavits are relevant to support the caveator's argument that the propounder exerted undue influence over the decedent, and, as such, are admissible into evidence, which defeats their exclusion.

Other information contained in the excluded affidavits outline the decedent's deteriorating health and memory based upon the times the affiants spent with him in the two months prior to his death. They also assert the propounder did not allow the caveator to see her father on one occasion. These affidavits meet the requirements of N.C. Gen. Stat. §1A-1, Rule 56(e) and do not violate Rule 802 or the case law outlined in *In re Will of Ball*. The trial court also erred by striking the affidavits on those grounds.

We note that North Carolina's Dead Man's Statute, N.C. Gen. Stat. § 8C-1, Rule 601(c), is not at issue here; as none of the affiants are interested witnesses. *See Taylor v. Abernethy*, 174 N.C. App. 93, 96, 620 S.E.2d 242, 246 (2005) (noting that to be disqualified as a interested witness under the statute, the witness must have "a direct legal or pecuniary interest in the outcome of the litigation . . . a pecuniary interest alone is insufficient to disqualify a witness under Rule 601." (internal quotation marks and citations omitted)), *cert. denied*, 360 N.C. 367, 630 S.E.2d 454 (2006).

## VII. Summary Judgment

After granting the motion to strike the caveator's affidavits in opposition to summary judgment, the trial court found there was no standing for the caveator to bring the case and no genuine issue of material fact existed. The court granted the propounder summary judgment as a matter of law. We disagree.

In her caveat, the caveator asserted the decedent lacked capacity to execute the will, the will was procured by undue influence and duress, and that "upon information and belief" the will was not executed according to the legal requirements for a valid attested will. We address each contention.

## 1. Testamentary Capacity

The presumption is that "every individual has the requisite capacity to make a will, and those challenging the will bear the burden of proving, by the greater weight of the evidence, that such capacity was wanting." *In re Will of Sechrest,* 140 N.C. App. 464, 473, 537 S.E.2d 511, 517 (2000). "A testator has testamentary capacity if he comprehends the natural objects of his bounty; understands the kind, nature and extent of his property; knows the manner in which he desires his act to take effect; and realizes the effect his act will have upon his estate." *In re Will of Buck,* 130 N.C. App. 408, 412, 503 S.E.2d 126, 130 (1998), *aff'd,* 350 N.C. 621, 516 S.E.2d 858 (1999) (citing *In re Will of Shute,* 251 N.C. 697, 111 S.E.2d 851 (1960)).

To establish lack of testamentary capacity, s caveator need only show that any one of the essential elements of testamentary capacity is lacking. *In re Will of Kemp*, 234 N.C. 495, 499 (1951). A caveator cannot "establish lack of testamentary capacity where there [is] no specific evidence 'relating to testator's understanding of his property, to whom he wished to give it, and the effect of his act in making a will at the time the will was made.'" *In re Estate of Whitaker,* 144 N.C. App. 295, 298, 547

S.E.2d 853, 856 (quoting *In re Will of Buck,* 130 N.C. App. at 413, 503 S.E.2d at 130), *disc. review denied,* 354 N.C. 218, 555 S.E.2d 278 (2001). It is not sufficient for a caveator to present "only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will, upon which [a caveator's] witnesses based their opinions as to [the testator's] mental capacity." *In re Will of Buck,* 130 N.C. App. at 412, 503 S.E.2d at 130.

Here, the caveator's affidavits allege the decedent was suffering from cancer and dementia, and was taking strong pain medications in the months preceding his death and when he purportedly executed the 2007 Will less than one month prior to his death. Although the propounder asserted in her response to the caveat that the decedent did not have dementia, the decedent's death certificate, submitted as an attachment to the caveat, lists "dementia" as a cause of death. The propounder is listed as the informant on the death certificate. As noted, decedent executed the purported 2007 Will on 3 April 2007 and died 2 May 2007. Viewed in the light most favorable to the caveator, as the nonmoving, genuine issue of material fact exists concerning decedent's testamentary capacity.

## 2. Undue Influence and Duress

In the context of a will caveat,

> [u]ndue influence is a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result.

*In re Estate of Loftin*, 285 N.C. 717, 722, 208 S.E.2d 670, 674-75 (1974).

Our courts consider a number of factors to determine whether undue influence was exerted on the testator:

> 1. Old age and physical and mental weakness;
>
> 2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision;
>
> 3. That others have little or no opportunity to see him;
>
> 4. That the will is different from and revokes a prior will;
>
> 5. That it is made in favor of one with whom there are no ties of blood;
>
> 6. That it disinherits the natural objects of his bounty;
>
> 7. That the beneficiary has procured its execution.

*In re Will of McNeil*, 230 N.C. App 241, 245-46, 749 S.E.2d 499, 503 (2013) (citation omitted).

Caveators are not required to demonstrate the existence of every factor to prove undue influence, because "undue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence." *Id.* (citation and quotation marks omitted). This Court has further clarified, "[w]hether these or other factors exist and whether executor unduly influenced decedent in the execution of the Will are

material questions of fact." *In re Will of Smith*, 158 N.C. App. 722, 727, 582 S.E.2d 356, 360, *review denied*, 357 N.C. 506, 588 S.E.2d 474 (2003).

While not synonymous, undue influence and duress are "related wrongs, and to some degrees overlap." *Link v. Link*, 278 N.C. 181, 191, 179 S.E.2d 697, 703 (1971). "Duress is the result of coercion and may be described as the extreme of undue influence and may exist even when the victim is aware of all facts material to his decision." *In re Estate of Loftin*, 285 N.C. at 722-23, 208 S.E.2d at 675. A caveator's allegations underlying her claims of undue influence and duress may be the same. *See In re Will of McNeil*, 230 N.C. App at 249 n.5, 749 S.E.2d at 505.

The caveator's affidavits, as submitted, create a genuine issue of material fact of whether the purported 2007 Will was procured by undue influence or duress. The affidavits assert the decedent's physical and mental weakness around the time of the 2007 Will's purported execution; the propounder's status as decedent's primary caregiver, and her refusal to allow the caveator to see the decedent on one occasion prior to his death; and the decedent's stated fear of the propounder and how he did not trust her.

Viewed in the light most favorable to the nonmoving party, the affidavits also emphasize the propounder's continued insistence that the decedent sign papers to give her all of his property. The affidavits assert that the decedent did not want to leave the propounder any of his property, and actually refused to do so. Whether the

factors pertaining to undue influence exist and whether the propounder "unduly influenced decedent in the execution of the [w]ill are material questions of fact." *See In re Will of Smith*, 158 N.C. App. at 727, 582 S.E.2d at 360. When viewed in the light most favorable to the caveator, genuine issue of material fact exists to preclude summary judgment on the issues of undue influence and duress.

### 3. Proper Execution of the Will

For an attested written will to be valid, it must comply with the statutory requirements as set forth in N.C. Gen. Stat. § 31-3. *In re Will of Priddy*, 171 N.C. App. at 400, 614 S.E.2d at 458. "In a caveat proceeding, the burden of proof is upon the propounder to prove that the instrument in question was executed with the proper formalities required by law." *In re Will of Coley,* 53 N.C. App. 318, 320, 280 S.E.2d 770, 772 (1981). N.C. Gen. Stat. § 31-3, as effective in the present case, required:

> (a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.
>
> (b) The testator must, with intent to sign the will, do so by signing the will himself or by having someone else in the testator's presence and at his direction sign the testator's name thereon.
>
> (c) The testator must signify to the attesting witnesses that the instrument is his instrument by signing it in their presence or by acknowledging to them his signature previously affixed thereto, either of which may be done before the attesting witnesses separately.

> (d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other.

N.C. Gen. Stat. § 31-3 (2011) (subsequently amended by N.C. Gen. Stat. § 31-3.3, effective 1 January 2012).

This Court has allowed caveators to challenge whether a will was properly executed, even where self-proving affidavits accompanied the notarized and signed will. *In re Will of Priddy*, 171 N.C. App. at 400-01, 614 S.E.2d at 458-59 (holding material issue of fact existed as to whether the testator complied with the will formalities where caveator presented evidence the testator did not sign in the presence of an attesting witness or acknowledge his signature to that witness, and the attesting witness did not sign in the presence of the testator).

Here, along with the allegations of lack of testamentary capacity, undue influence, and duress, three of the caveator's affidavits by blood relatives, stated the affiant was familiar with the decedent's signature, and that the signature on the 2007 Will was not the decedent's. Viewed in the light most favorable to the caveator, as the nonmoving party, genuine issue of material fact exists regarding whether the 2007 Will complied with the statutorily required formalities of execution. *Id.*

## VIII. Conclusion

The trial court erred in ruling the caveator lacked standing to bring the caveat to the 2007 Will and by striking the caveator's four affidavits.

Because of the factual nature of issues presented during caveat proceedings, "[s]ummary judgment should be entered cautiously." *Seagraves*, 206 N.C. App. at 338, 698 S.E.2d at 161. After our review and consideration of all the affidavits and other evidence presented in the record, and based upon our *de novo* review, genuine issues of material fact exist to render summary judgment improper. The trial court's order is reversed and this cause is remanded for trial. *It is so ordered.*

REVERSED AND REMANDED.

Judges McCULLOUGH and DILLON concur.